Upon review of the competent evidence of record, and finding no good grounds to reverse the Opinion and Award of the Deputy Commissioner, the Full Commission hereby adopts with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as law the following, which were entered into by the parties in their pre-trial agreement as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and the defendant-employer.
3. The employer-defendant is a duly qualified self-insured corporation. Hartford Specialty Risk Services is the third party administrator on this claim.
4. Plaintiff alleges, and defendants deny, that she suffered bilateral carpal tunnel syndrome and synovitis, both occupational diseases, on or about August 6, 1998, which she contracted out of and in the course of her employment.
5. Plaintiff's average weekly wage was $561.65 as of August 6, 1998, which yields a compensation rate of $374.43 per week.
 ***********
Based upon the competent evidence of record and reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of August 6, 1998, employee-plaintiff was employed by employer-defendant as an Accounting Assistant III. She has worked for Duke Energy as an Accounting Assistant since 1977.
2. As of August 6, 1998, employee-plaintiff was 41 years old and weighed approximately 254 pounds. She is left-handed.
3. In the course of her employment as an Accounting Assistant, III, plaintiff spent 70 to 85 percent of her workday entering data into the computer, using a keyboard and mouse. The majority of her data entry is numbers and she utilizes the number pad on the right side of her keyboard, typing with her right hand. She also uses her mouse with her right hand.
4. In addition to data entry, plaintiff performs a variety of job tasks during her work day, including filing, reviewing documents such as payroll and expense vouchers and talking on the telephone. She has also worked at a cash window sorting money and taking petty cash vouchers from employees during the course of her employment.
5. During the course of her workday, plaintiff takes a thirty-minute lunch break, as well as bathroom and stretch breaks. She also testified that she travels from her workstation to the file room during the course of the day.
6. On February 21, 1996, plaintiff was diagnosed with Type II Diabetes Mellitus by Dr. David Rhinehart of South Point Family Practice.
7. Thereafter, on August 28, 1998, plaintiff returned to Dr. Rhinehart complaining of vague numbness in her arms especially at night. Dr. Rhinehart diagnosed possible carpal tunnel syndrome.
8. On September 15, 1998, plaintiff was seen by Dr. Martin Henegar at Carolina Neurosurgery. Dr. Henegar noted that plaintiff's diagnostic tests revealed mild to moderate left carpal tunnel syndrome and mild right carpal tunnel syndrome. He discussed surgical intervention with plaintiff, and advised that some of plaintiff's symptoms may be a result of radicular compression, not carpal tunnel syndrome. Dr. Henegar performed a carpal tunnel release on plaintiff's left hand on October 14, 1998.
9. Following plaintiff's surgery, she was out of work from October 14, 1998 through November 30, 1998. Plaintiff has continued to work as an Accounting Assistant III for employer-defendant since that time.
10. Plaintiff underwent an independent medical examination by Dr. Steven Sanford of the Carolina Hand Center on September 30, 1999. Dr. Sanford performed a thorough physical examination of plaintiff, reviewed her prior medical records, took a history from plaintiff and reviewed the written job description of the Accounting Assistant III position, as well as plaintiff's own verbal job description. He concluded that plaintiff's bilateral carpal tunnel syndrome is based on idiopathic risk factors such as plaintiff's age, gender, diabetes and elevated body mass index, and that plaintiff's condition is not causally related to her employment at Duke Energy.
11. Although plaintiff worked for Duke Energy as an Accounting Assistant for 23 years, she contracted carpal tunnel syndrome only after she was diagnosed with diabetes. This temporal relationship is evidence that plaintiff's diabetes, not her employment, caused her neuropathy.
12. Dr. Pfeiffer performed a neurological evaluation with plaintiff on November 12, 1999. Plaintiff advised Dr. Pfeiffer that she awakened during the night with numbness in her ulnar distribution of the left arm. Dr. Pfeiffer noted that plaintiff was left-handed and performed many activities with her left arm. She also complained of intermittent left leg pain and back pain. He diagnosed mild left ulnar neuropathy at the elbow, and recommended that plaintiff wrap her left elbow with a towel at night to avoid flexing the left arm. He further diagnosed diabetes mellitus with probable diabetic neuropathy. Dr. Pfeiffer then saw plaintiff on March 31, 2000, and her ulnar neuropathy had resolved with use of the towel while sleeping.
13. On May 15, 2000, Dr. Pfeiffer completed a Form 25R, wherein he indicated that plaintiff did not have any further left extremity weakness, and that she retained a 0% impairment rating to her left upper extremity. Dr. Pfeiffer also noted on his Form 25R that plaintiff's left ulnar weakness was not work-related. This opinion was based on the fact that the use of the towel relieved her symptoms which indicated that her condition was due to positioning during sleep rather than work activities.
14. Dr. Pfeiffer testified that the etiology of plaintiff's condition would depend upon the history of her work activities. If plaintiff performed most of the number entry and use of the computer mouse with her right hand, then, if the condition was work related, one would expect to find the symptoms and disease on the right side. Dr. Pfeiffer explained that, if the Commission finds that plaintiff primarily performed her work duties with her right hand, then medically he could not associate her left hand problems with work. Under these facts, the finding of left hand CTS would indicate that the disease was not related to work.
15. Dr. Henegar testified that with regard to plaintiff's carpal tunnel syndrome, she reached maximum medical improvement in 1999, and as of his last visit with her, she had no symptoms related to the carpal tunnel syndrome, and had no disability of her left hand as a result of the carpal tunnel syndrome. Dr. Henegar testified that plaintiff had diabetes and that there is an association of increased incidence of carpal tunnel syndrome in patients with diabetes. More significantly, Dr. Henegar testified that, if the carpal tunnel syndrome was caused by work, then he would anticipate that the condition would have developed in the hand that was used predominantly at work.
16. The greater weight of the evidence is that plaintiff primarily performed her computer activities with defendant-employer, including entry of numbers and use of the computer mouse, with her right hand. Based on the testimony of Drs. Henegar, Pfeiffer, and Sanford, the fact that plaintiff primarily used her right hand for data entry yet contracted carpal tunnel syndrome in her left hand indicates that the employment was not likely to be a significant causative factor in the development of plaintiff's carpal tunnel syndrome. The greater weight of the medical evidence is that plaintiff's conditions are not caused by her employment. The testimony concerning causation requires the witnesses, and the Commission, to assume that plaintiff's repetitive use of the computer was performed with her left hand, whereas the greater weight of the evidence is that plaintiff performed this work with her right hand.
17. Dr. Henegar's opinion regarding the causation of plaintiff's carpal tunnel syndrome was based entirely on the subjective history provided by plaintiff. He did not review a written job description, indicated that he knew nothing about plaintiff's job except that it was data entry that required prolonged use of the keyboard, and was not aware that plaintiff used her right hand to enter numbers and to use her mouse. Dr. Henegar did not base his opinion on an accurate description of plaintiff's job; therefore, his opinion is entitled to less weight.
18. Although Dr. Rhinehart answered hypothetical questions asking him to assume that plaintiff did 70 to 85% of her work with computer data entry, and he stated that this activity could be the cause of plaintiff's condition, this testimony is not persuasive. In responding to questions from plaintiff's counsel, Dr. Rhinehart refused to comment on whether plaintiff's employment was a significant causal factor for her carpal tunnel syndrome because he did not know what other activities she was doing with her hands. The Full Commission has found that the bulk of plaintiff's activities were performed with plaintiff's right hand, therefore, the proper +evidentiary foundation for plaintiff's questions and the witness' testimony is lacking. Thus, the witness' testimony constitutes speculation and conjecture rather than evidence of causation.
 ***********
Based upon the foregoing, the Full Commission makes the following:
 CONCLUSION OF LAW
Employee-plaintiff has failed to prove that she contracted a compensable occupational disease as a result of her employment on or about August 6, 1998. N.C.G.S. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Employee-plaintiff's claim is DENIED.
2. Each side shall pay its own costs, except the defendants shall pay an expert witness fee in the amount of $350.00 to Dr. Martin M. Henegar.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER